E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
AYLIN B. KUZUCAN (Cal. Bar No. 319228)
Assistant United States Attorney
General Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-8603
     Facsimile: (213) 894-0141
     Email:     Aylin.Kuzucan@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 23-cr-00450-MEMF |
|---|---|
| Plaintiff, | **GOVERNMENT'S EVIDENTIARY HEARING MEMORANDUM** |
| v. | |
| ABRAHAM SALCEDO, | Hearing Date: April 26, 2024<br>Hearing Time: 3:00 p.m.<br>Location:    Courtroom of the<br>             Hon. Maame Ewusi-<br>             Mensah Frimpong |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Aylin Kuzucan, hereby files its Evidentiary Hearing Memorandum, in advance of the April 26, 2024, evidentiary hearing in the above-captioned matter.

///

///

///

1

This Evidentiary Hearing Memorandum is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: April 25, 2024                Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

*/s/ Aylin Kuzucan*
AYLIN KUZUCAN
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

The Petition and Amended Petitions on Probation and Supervised Release (collectively the "Petition") submitted by the United States Probation and Pretrial Services Office ("Probation") allege that defendant Abraham Salcedo ("defendant") committed nine violations of his supervised release terms, prior to the preliminary revocation hearing held on March 5, 2024.  At his preliminary revocation hearing, defendant denied all violations; however, he stated his intent to admit to one allegation.  The Court deferred the taking of the admission of the one allegation until the close of the evidentiary hearing.  (Dkt. 14.)  Each of the nine allegations state the same violation:  "Having been ordered by the Court to refrain from any unlawful use of a controlled substance . . . Abraham Salcedo used methamphetamines, as evidenced by confirmed laboratory analysis of his urine sample."  (Dkt. 8, February 29, 2024 Petition; April 18, 2024 Petition; April 22, 2024 Petition.)  The Court ordered an evidentiary hearing on these allegations, now set for April 26, 2024.  (Dkt. 14, 19.)  This memorandum is intended to provide the Court with an overview of the government's witnesses and evidence, and to outline legal issues that may arise at the hearing.

**II.  PROCEDURAL HISTORY AND BACKGROUND**

On June 3, 2022, defendant appeared before the Honorable Janis L. Sammartino, Chief United States District Judge of the Southern District of California, following a guilty plea to Importation of Fentanyl in violation of 21 U.S.C. §§ 952, 960 (Count 1); and, Importation of Methamphetamines, in violation of 21 U.S.C. §§ 952, 960 (Count 2).  (Dkt. 4.)  The Court sentenced defendant to 18 months

of imprisonment with three years of supervised release to follow. (*Id.*)

On June 1, 2023, defendant began his supervised release term and on June 13, 2023, his assigned probation officer, Javarie Johnson, advised him of the standard and special conditions of his supervision.

On that same day, defendant submitted a urine specimen to probation that tested positive for methamphetamine. (Dkt. 8, February 16, 2024 Violation Report at 2.) Defendant admitted to using methamphetamine a day before he submitted the specimen. (*Id.*) Probation modified defendant's supervision conditions to include outpatient substance abuse treatment and counseling program and a residential substance abuse treatment and counseling program. (*Id.*) Defendant agreed to the proposal and consented to the modification. (*Id.*). Subsequent to defendant's June 13, 2023 positive drug test, defendant tested positive 10 times for methamphetamine based on urine samples he submitted to probation on: October 3, 2023, January 10, 2024, January 18, 2024, January 19, 2024, January 23, 2024, January 25, 2024, January 27, 2024, February 1, 2024, February 10,2024 and February 21, 2024. (Dkt. 8, February 29, 2024 Petition; April 18, 2024 Petition; April 22, 2024 Petition.) When confronted with each of the test results by Probation, Defendant denied using methamphetamine. (April 22, 2024 Violation Report at 3-4.)

Probation then submitted each test to Alere Toxicology Inc., ("Alere") to confirm the finding that the urine submitted by defendant tested positive for methamphetamines. (*See* Dkt. 8, April 18, 2024 Petition, February 29, 2024 Petition). Based on Probation's

own review and Alere's findings, Probation amended their Petition, dismissing defendant's January 10, 2024, January 19, 2024, and February 1, 2024, positive drug test violations. (April 22, 2024 Violation Report at 3-4; February 29, 2024 Petition at 2.) The January 10, 2024, alleged violation was dismissed because of a typographic error. In the original petition, Probation duplicated the January 10, 2024, positive drug test violation, and inadvertently double counted the allegation. (*Id.*) The amended petition correctly cites to only one positive drug test violation on January 10, 2024. (*Id.*) The January 19, 2024, alleged violation was dismissed based on Alere's report that defendant's positive drug test results were residual and not a product of a new use of methamphetamine. (April 22, 2024, Violation Report at 4-5.) Finally, the February 1, 2024, alleged violation was dismissed based on Alere's finding that the positive drug test submitted to their lab did not have detectable quantities of methamphetamine. (*Id.*) Alere confirmed the remaining positive drug tests submitted by Probation, and Probation concluded that defendant tested positive for methamphetamine nine times between June 13, 2023 and February 21, 2024. (*Id.*)

With the exception of defendant's admission on June 13, 2023, he continues to deny Probation's allegations of his unlawful use of methamphetamines.

**III. ALLEGATION**

The Petition alleges that defendant, after having been ordered by the Court to refrain from any unlawful use of a controlled substance, used methamphetamines, as evidenced by his one admission and confirmed laboratory analysis of his urine samples, on or before

3

June 13, 2023, October 3, 2023, January 10, 2024, January 18, 2024, January 23, 2024, January 25, 2024, January 27, 2024, February 10, 2024 and February 21, 2024.  The government will proceed to prove the June 13, 2023, January 27, 2024, February 10, 2024 and February 21, 2024 violations.[1]

**IV.  GOVERNMENT WITNESSES**

To prove these allegations, the government intends to call two witnesses -- Probation Officer Javarie Johnson and Certifying Scientist Cheska Burleson -- at the evidentiary hearing, but reserves its right to call additional witnesses should the need arise.

**A.   Probation Officer Javarie Johnson**

Probation Officer Javarie Johnson has supervised defendant since the defendant commenced his three-year supervised release term on June 13, 2023.  Officer Johnson will testify that: (1) he explained the terms and conditions of defendant's probation to defendant on June 13, 2023; (2) he collected and/or reviewed reports of defendant's urine samples on June 13, 2023, January 27, 2024, February 10, 2024 and February 21, 2024; and (3) defendant tested positive for methamphetamine on each of the aforementioned dates. Officer Johnson will further testify that he discussed these positive drug tests with defendant for each date he tested positive, and that defendant denied using methamphetamine.  Officer Johnson will additionally testify that, given defendant's denial of methamphetamine use, he submitted each of defendant's urine specimen to Alere to confirm that it, in fact, contained methamphetamine. Finally, Officer Johnson will describe the policies and procedures of

---

[1] The government reserves its right to prove the remainder of the allegations, should the need arise.

4

the probation office when administering drug tests and confirming positive drug test results.

### B. Certifying Scientist Cheska Burleson

Cheska Burleson is the Technical Director at Alere Toxicology Services, in Gretna, Louisiana.  Ms. Burleson will testify that Alere received defendant's urine specimens from Probation and handled them in accordance with Alere's chain-of-custody protocols.  She will confirm the results of three of defendant's positive drug tests: January 27, 2024, February 10, 2024, and February 21, 2024.  Further, Ms. Burleson will describe Alere's policies and procedures when confirming urine-based drug tests for the probation office.

## V. GOVERNMENT EXHIBITS

The government will move to submit the following exhibits:

1. Defendant's June 13, 2023, initial positive drug test (Methamphetamine) administered by the United States Probation Office;
2. June 13, 2023, United States Probation Office chain of custody form;
3. June 13, 2023, defendant's signed admission to consuming a prohibited substance (Methamphetamine);
4. January 27, 2024, initial positive drug test (Methamphetamine) administered by the United States Probation Office;
5. January 27, 2024, defendant's signed denial to consuming a prohibited substance (Methamphetamine);
6. January 27, 2023, United States Probation Office chain of custody form;
7. January 27, 2024, positive drug test confirmation by Alere Toxicology Services, Inc. and Alere's chain of custody form;
8. February 10, 2024, initial positive drug test (Methamphetamine) administered by the United States Probation Office;
9. February 10, 2024, defendant's signed denial to consuming a prohibited substance (Methamphetamine);
10. February 10, 2024, United States Probation Office chain of custody form;

5

11. February 10, 2024, positive drug test confirmation by Alere Toxicology Services, Inc. and Alere's chain of custody form;
12. February 21, 2024, initial positive drug test (Methamphetamine) administered by the United States Probation Office;
13. February 21, 2024, defendant's signed denial to consuming a prohibited substance (Methamphetamine);
14. February 21, 2024, United States Probation Office chain of custody form;
15. February 21, 2024, positive drug test confirmation by Alere Toxicology Services, Inc. and Alere's chain of custody form;
16. Defendant's United States Probation Office October 2023 Monthly Treatment Report;
17. Defendant's United States Probation Office November 2023 Monthly Treatment Report;
18. Defendant's United States Probation Office December 2023 Monthly Treatment Report;
19. Defendant's United States Probation Office January 2024 Monthly Treatment Report;
20. Defendant's United States Probation Office February 2024 Monthly Treatment Report;
21. March 7, 2024, Alere's report on defendant's residual drug tests;
22. March 28, 2024, Alere's report on defendant's residual drug tests;
23. January 27, 2024, Alere Toxicology Report, including qualifications of chemist involved in confirming drug tests, chain of custody forms, and confirmation procedure and resulting data;
24. February 10, 2024, Alere Toxicology Report, including qualifications of chemist involved in confirming drug tests, chain of custody forms, and confirmation procedure and resulting data; and
25. February 21, 2024, Alere Toxicology Report, including qualifications of chemist involved in confirming drug tests, chain of custody forms, and confirmation procedure and resulting data.

The government reserves its right to admit other exhibits, should the need arise.

6

**VI.  EVIDENTIARY STANDARDS GOVERNING REVOCATION PROCEEDINGS**

    **A.  The Government Must Establish Defendant's Violation by a Preponderance of the Evidence**

The Court may revoke defendant's probation if it finds by a preponderance of the evidence that defendant violated a condition of his probation.  18 U.S.C. § 3583; 18 U.S.C. § 3565(a); *United States v. Verduzco*, 330 F.3d 1182, 1184 (9th Cir. 2003) (noting that a district court may revoke probation if it "finds by a preponderance of the evidence that the defendant violated a condition of [probation]").  "The standard of proof required is that evidence and facts be such as reasonably to satisfy the judge that the probationer's conduct has not been as required by the conditions set by the court."  *United States v. Guadarrama*, 742 F.2d 487, 489 (9th Cir. 1984).  With respect to revocation of probation and revocation of supervised release, "the difference between the two proceedings, for the purposes of applying evidentiary rules, is inconsequential."  *United States v. Walker*, 117 F.3d 417, 420 (9th Cir. 1997).

The government establishes an allegation by a preponderance of the evidence when the Court is persuaded that the claim is more probably true than not true.  *See* Ninth Cir. Model Civil Jury Instr. 1.3: Burden of Proof--Preponderance of the Evidence.  Although preponderance of the evidence is a "[l]ower standard than the 'beyond a reasonable doubt' standard required for a criminal conviction, there must still be credible evidence the [probationer] actually violated the terms of [probation]."  *United States v. Perez*, 526 F.3d 543, 547 (9th Cir. 2008); *accord United States v. Hilger*, 728 F.3d 947, 949-50 (9th Cir. 2013) ("The government's burden of proof is

accordingly lower [than its burden of proof at a criminal trial]: it must prove only a violation of the conditions of release by a preponderance of the evidence.").

### B. Hearsay Is Admissible in Revocation Proceedings

Revocation proceedings are intended "to be 'flexible,' reflecting their difference from a criminal prosecution." *Hilger*, 728 F.3d at 950 (citing *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972)). Because "[r]evocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions," *Morrissey*, 408 U.S. at 480, the Court is permitted "to consider evidence . . . that would not be admissible in an adversary criminal trial." *Id.* at 489.

To this end, a revocation hearing is an informal proceeding where the Federal Rules of Evidence do not apply. *United States v. Verduzco*, 330 F.3d 1182, 1185 (9th Cir. 2003) (citing *Walker*, 117 F.3d at 421) ("[T]he Federal Rules of Evidence do not apply to supervised release [or probation] revocation hearings."); *United States v. Simmons*, 812 F.2d 561, 564 (9th Cir. 1987) ("Less process is due at a revocation hearing, and that process must be flexible enough to allow the court to consider documentary evidence that may not meet usual evidentiary requirements."); Fed. R. Crim. P. 1101(d) ("The rules -- except for those on privilege -- do not apply to the following: . . . granting or revoking probation or supervised release[.]").

Nevertheless, the "[a]dmission of hearsay evidence in revocation of [probation] proceedings is governed by the Fifth Amendment right

8

to due process." *Perez*, 526 F.3d at 548 (citing *Hall*, 419 F.3d at 985 n.4)).  Accordingly, a probationer "is guaranteed the right to confront and cross-examine adverse witnesses at a revocation hearing, unless the government shows good cause for not producing the witnesses."  *Id.* (quoting *Hall*, 419 F.3d at 986) (cleaned up); *see also* Fed. R. Crim. P. 32.1(b)(2)(C) (a probationer is entitled to "an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear").  In other words, "[t]he defendant's right to confrontation is weighed under the specific circumstances presented."  *Walker*, 117 F.3d at 420 (cleaned up).  "In conducting the balancing test, the trial court may consider the importance of the evidence to the court's finding, the [probationer's] opportunity to refute the evidence, and the consequences of the court's finding," as well as "the difficulty and expense of procuring witnesses and the traditional indicia of reliability borne by the evidence."  *Id.*

The Ninth Circuit has found that hearsay testimony based upon records maintained by another person at the witness's place of business is admissible at a probation revocation hearing, where there is no reason to doubt the reliability of the evidence and no contrary evidence presented by the adverse party.  *Id.* at 420 (holding that a probation officer's hearsay testimony based upon records maintained by another probation officer was admissible because the evidence offered was reliable and the defendant offered no contrary evidence).

Alternatively, although the rules of evidence do not apply in revocation proceedings, Federal Rule of Criminal Procedure 803(6)

9

also allows a record of an act, event, condition, opinion, or diagnosis to be admitted if: "(A) the record was made at or near the time by -- or from information transmitted by -- someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness."

**VII. CONCLUSION**

After the evidentiary hearing, this Court should find that defendant violated the terms of his probation based on defendant's positive drug tests on June 13, 2023, January 27, 2024, February 10, 2024 and February 21, 2024.